**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-80342-CIV-ROSENBERG**

KK-PB FINANCIAL, LLC,

                    Appellant,

     v.

160 ROYAL PALM, LLC,

                    Appellee.

## NOTICE OF APPEAL

Appellant, KK-PB Financial, LLC, gives notice that it appeals to the United States Court of Appeals for the Eleventh Circuit from the *Order Estimating the Claim of KK-PB Financial, LLC and Denying Ability to Credit Bid* dated February 26, 2019 [Bankr. ECF No. 603] of the United States Bankruptcy Court for the Southern District of Florida (attached as **Exhibit A**). The appeal is pursuant to the *Order Certifying Matter for Direct Appeal to the United States Court of Appeals* dated November 1, 2019 [ECF No. 42] (attached as **Exhibit B**), and the *Paperless Order* dated November 4, 2019 [ECF No. 44] (attached as **Exhibit C**), entered *sua sponte* by the United States District Court for the Southern District of Florida.

The parties to the orders appealed from and the names and addresses of their respective attorneys are as follows:

## APPELLANT

Party:        KK-PB Financial, LLC, secured creditor and unsecured creditor in the Debtor's chapter 11 case.

Attorneys:   WHITE & CASE LLP
                John K. Cunningham
                James N. Robinson
                Fan B. He
                Southeast Financial Center, Suite 4900

200 South Biscayne Boulevard
Miami, Florida 33131-2352
Telephone:  (305) 371-2700
Facsimile:  (305) 358-5744


**APPELLEE**

Party:          160 Royal Palm, LLC, the Debtor in the underlying chapter 11 case.
Attorneys:   SHRAIBERG, LANDAU, & PAGE, P.A.
                    Philip J. Landau
                    Eric S. Pendergraft
                    2385 NW Executive Center Drive, #300
                    Boca Raton, Florida 33431
                    Telephone:  (561) 443-0800
                    Facsimile:  (561) 998-0047

                    DECHERT LLP
                    G. Eric Brunstad, Jr.
                    Special Appellate Counsel for the Debtor/Appellee
                    90 State House Square
                    Hartford, CT 06103
                    Phone: 860-524-3960
                    Fax: 860-524-4189
                    eric.brunstad@dechert.com


Dated: November 12, 2019                    WHITE & CASE LLP
Miami, Florida

                              By:  */s/ James N. Robinson*
                                    James N. Robinson
                                    Florida Bar No. 608858
                                    John K. Cunningham
                                    Florida Bar No. 542490
                                    Fan B. He
                                    Florida Bar No. 0095597
                                    Southeast Financial Center, Suite 4900
                                    200 South Biscayne Boulevard
                                    Miami, Florida  33131-2352
                                    Telephone: (305) 371-2700
                                    Facsimile:  (305) 358-5744

                                    *Counsel for KK-PB Financial, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on this day, the foregoing document was electronically filed

with the Clerk of the Court using CM/ECF.  I further certify that the foregoing document is being

served this day on all parties via transmission of Notices of Electronic Filing generated by

CM/ECF.

By: */s/ James N. Robinson*
_____
James N. Robinson

# EXHIBIT A



**ORDERED in the Southern District of Florida on February 25, 2019.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| **In re:** | **CASE NO. 18-19441-EPK** |
| **160 ROYAL PALM, LLC,** | **CHAPTER 11** |
| Debtor. | |
| _____/ | |

**ORDER ESTIMATING THE CLAIM OF KK-PB FINANCIAL, LLC**
**AND DENYING ABILITY TO CREDIT BID**

This matter came before the Court for evidentiary hearing on January 8, 2019, January 11, 2019, February 15, 2019, and February 19, 2019 upon the _Debtor's Motion to Limit Credit Bids with Respect to Sale of Substantially All of Its Assets_ [ECF No. 103] filed by 160 Royal Palm, LLC (the "Debtor"); _Secured Creditor KK-PB Financial, LLC's Motion to Estimate Claim for Purposes of Credit Bidding Pursuant to 11 U.S.C. §§ 502(c) and 363(k)_ [ECF No. 133] filed by KK-PB Financial, LLC ("KK-PB"); and _Secured Creditor KK-PB Financial, LLC's Motion to (I) Modify and Terminate Automatic Stay; or (II) Dismiss Chapter 11 Proceeding_ [ECF No. 69] filed by KK-PB. On February 22, 2019, the Court heard closing arguments

from the Debtor, the EB-5 Investors,[1] and KK-PB, and made findings of fact and conclusions of law

on the record as follows:

The Debtor in this case, 160 Royal Palm, LLC, is the owner of a hotel construction project located in the Town of Palm Beach. The hotel is locally known as the Palm House Hotel.

The Palm House Hotel has a tortured history. During its reconstruction, ownership of the hotel property has transferred more than once. No owner has been able to complete the project. It sits dormant and neglected.

It is alleged that the person most recently in control of the Debtor, Robert Matthews, along with others, used the hotel project to solicit investments from foreign nationals under the EB-5 program, enticing investments of more than $500,000 each from dozens of foreign investors based on the promise of eased acquisition of green cards. Those EB-5 Investors, many of whom have filed proofs of claim in this case and have been represented in this particular matter, allege that a substantial portion of the funds they invested ended up flowing through the Debtor and that some of those funds were used as part of the consideration for a 2013 sale of the equity interest in the Debtor. The EB-5 Investors have initiated a suit in the District Court here in West Palm Beach against a number of parties involved in this alleged scheme, including the Debtor in this case and KK-PB Financial, LLC. KK-PB Financial is solely owned and controlled by Glenn Straub, the former equity owner of the Debtor. I mention these parties in particular as they are the focus of the matters now before the Court.

KK-PB Financial claims a mortgage on the hotel property. KK-PB initiated a foreclosure action in the Florida state courts several years ago. That action was followed by the appointment of a receiver. Eventually, the state court not only authorized the receiver to file a bankruptcy petition, but also authorized that receiver to supplant the Debtor's management. Thus, the Debtor in this case is managed by the former state court receiver, Mr. Cary Glickstein.

The stated purpose of this bankruptcy case is to facilitate a controlled liquidation of the Debtor's assets. The Debtor filed this case to avoid the loss of all potential equity in its property to the foreclosing creditor. The goal of this case is to preserve that value for the Debtor's other creditors including, in particular, the EB-5 Investors.

The Debtor sought offers for the hotel property. The Debtor entered into a stalking horse contract with a significant player in the real estate market. The Debtor then filed appropriate motions for approval of an auction procedure, thereby permitting the possibility of higher and better offers for the property. The stalking horse contract presents a tight timeline for the Debtor, requiring that the auction and sale hearing be accomplished in short order. Thus, the matters now before the Court require resolution as quickly as reasonably possible.

---

[1] The EB-5 Investors referred to in this order are the creditors who filed claims 3-1 through 65-1 in this chapter 11 case. Another group of EB-5 claimants, identified in ECF No. 172 as the Other Palm House Investors, filed an objection to KK-PB's motion to estimate claim but did not participate in the evidentiary hearings or closing argument in these matters.

KK-PB Financial claims a mortgage on the property. Generally speaking, the holder of a lien securing an allowed claim has the right to credit bid its claim in connection with any sale of its collateral proposed under section 363 of the Bankruptcy Code. KK-PB seeks to exercise that right in connection with the Debtor's proposed auction sale of the hotel property. The Debtor opposes KK-PB's request to credit bid in connection with any sale.

In furtherance of its request to credit bid in connection with the proposed auction of the hotel property, KK-PB filed a motion to estimate its claim under section 502(c). That is in the record at ECF number 133. There are responses at ECF numbers 166, 169 and 174.[2]

Section 502(c) permits the Court to estimate any claim for purposes of allowance where the liquidation of the claim would unduly delay the administration of the case. The concept behind this provision is that in many circumstances during a bankruptcy case there is not sufficient time to permit extensive discovery and an extended evidentiary hearing to determine a disputed claim. This case presents exactly such a circumstance. This Debtor has a limited time to maintain its rights under a significant stalking horse contract for the sale of substantially all of the assets of the estate. The issues raised in connection with KK-PB's secured claim in this case could require discovery done over a period of months and an extended trial. It is appropriate to use the claim estimation process under section 502(c) to address allowance or disallowance of KK-PB's claim. Not only is it important to determine whether KK-PB will be permitted to credit bid on the hotel property, but whether KK-PB has a valid lien may impact its right to object to the proposed sale under section 363.

Estimation under section 502(c) can be for any purpose in connection with a bankruptcy case. Indeed, the text of that provision states that estimation is for purposes of allowance. In many instances, the estimated claim is the claim for all purposes including eventual distribution in the case. In its motion, KK-PB asks the Court to estimate its secured claim solely for purposes of the auction sale of the hotel property. In its response, the Debtor asks not only that the Court estimate KK-PB's claim for purposes of participating in the auction, but that the Court estimate KK-PB's claim at $0 generally, for all purposes in this case.

It is useful to quote from Collier on Bankruptcy on this issue. Collier is the leading treatise on bankruptcy law.

"Section 502(c) expressly states that estimation is 'for purpose of allowance under this section'; thus, an estimation under section 502(c) generally should result in an allowed claim for all purposes in the bankruptcy case. Most subsections of section 502 refer to claims allowed under subsection (a), (b) or (c). Moreover, the section addressing reconsideration of claims, section 502(j), does not use the term 'estimated claim' but refers instead to a 'claim that has been allowed or disallowed.' Indeed, nowhere in the Bankruptcy Code is a distinction drawn between claims allowed under subsection 502(a), (b) or (c). Accordingly, a claim allowed under section 502(c) is on equal footing with other claims allowed under section 502."

Later in the same part of the treatise, it is stated that "[a]s an order applying section 502(c) allows or disallows a claim for all purposes in the case, principles of finality might apply, in

---

[2] In addition, the Court considered the response filed by the Debtor at ECF No. 163.

appropriate circumstances, for the same reasons those principles apply to other orders allowing or disallowing claims under section 502."

In reading these two quotations from Collier I have left out internal quotations and citations. I should note that in a footnote Collier points out that 28 USC section 157(b)(2)(B) and Bankruptcy Rule 3018 both contemplate estimation of claims solely for purposes of confirmation of a chapter 11 plan, but that these are the only instances where estimation for a limited purpose is contemplated in the relevant statutes and rules.

Thus, the Court's estimation of the claim of KK-PB Financial today will result in estimation of that claim for all purposes in this bankruptcy case. That will include plan confirmation and distributions.

The case law in this circuit and elsewhere provides this Court with wide discretion in how to approach estimation from a procedural standpoint. This Court's procedural approach to estimation is subject to appeal on an abuse of discretion standard. Many times an estimation proceeding will focus on documentary evidence, deposition transcripts, and affidavits, and the Court will provide only a truncated hearing. In this case, after consultation with the parties, the Court set four full days of evidentiary presentation followed by an additional half day for closing argument. This has been a particularly fulsome presentation in the context of claim estimation. There were hundreds of proposed exhibits and a number of fact and expert witnesses. It is hard to imagine how an evidentiary hearing on an objection to KK-PB's claim, outside the estimation process, would have been more detailed.

In addition to responding to KK-PB's motion to estimate, the Debtor filed a motion seeking a ruling from the Court that KK-PB should not be permitted to credit bid in connection with the auction of the hotel property. That is on file at ECF number 103. KK-PB responded at ECF number 164. The Debtor's motion is in effect the mirror image of KK-PB's motion to estimate. The Debtor argues that KK-PB's claim is subject to dispute for a variety reasons and also that, even if KK-PB's claim would be allowed as a secured claim, the Court should prohibit KK-PB from credit bidding for cause.

Finally, KK-PB filed a motion for relief from the automatic stay, seeking to continue with its foreclosure action in state court or, in the alternative, for dismissal of this case. That motion can be found at ECF number 69. The Debtor responded at ECF number 102.

All three of these matters, KK-PB's motion to estimate, the Debtor's motion to limit credit bidding, and KK-PB's motion for relief from stay or dismissal, were heard together in a concurrent evidentiary hearing. The Court has considered the evidence admitted during the evidentiary hearing. The Court has considered the arguments of the parties.

Let me begin with KK-PB's motion for relief from stay or for dismissal of the case. KK-PB's goal is to return to state court to complete its foreclosure action. At the evidentiary hearing, KK-PB presented nearly no evidence to support the substantive allegations in this motion nor did counsel point to any such evidence in closing argument. But even if KK-PB's secured claim is allowed in full, there is not cause for relief from stay at this time. The Debtor filed this case in an attempt to realize value for all of its creditors, not just for KK-PB. The Debtor has diligently pursued that sale, entering into a contract with a stalking horse purchaser. This

is an appropriate use of chapter 11. The Court has approved a procedure for the proposed sale consistent with regular practice in this circuit. There is a very short timeline for that sale. The Debtor and other creditors should have the chance to see if the proposed auction will result in a potential distribution to creditors in this case. There is little or no harm to KK-PB under the circumstances, even if it does indeed have an allowed secured claim in this case. The potential harm to other creditors is significant. KK-PB's motion for relief from stay or for dismissal at ECF number 69 will be denied.

I will address the motion to estimate and the motion to limit credit bidding in tandem as the issues relevant to those motions are the same. It is useful first to describe the transaction that lies at the center of the present dispute.

As of 2013, 160 Royal Palm, LLC, the Debtor in this case, was owned and controlled by Glenn Straub. Mr. Straub was the sole member of 160 Royal Palm and was also its manager. Mr. Straub negotiated a sale of the hotel property to Robert Matthews. The proposed sale was documented by a traditional purchase and sale agreement. The Debtor was to sell its real property to an entity formed for the purpose of the transaction. The buyer was to be beneficially owned solely by Mr. Matthews. The negotiated purchase price was $36 million. Of this sum, 25% was to be paid in cash and the remaining amount was to take the form of seller financing secured by a mortgage on the hotel property. In other words, Mr. Straub agreed to sell the hotel property and the consideration was to be partly cash and partly a mortgage obligation.

The 2013 purchase and sale agreement was amended twice. The first amendment is most important for purposes of these matters. In the first amendment, the parties agreed that the purchaser could have the option of acquiring the membership interest in 160 Royal Palm, LLC rather than purchase the real property directly. In the end, the purchaser exercised this option. Thus, rather than a real estate transaction, the transaction took the form of the sale of an equity interest. But the parties preserved all of the other aspects of the transaction as originally contemplated. In order to facilitate the seller financing, it was necessary for Mr. Straub to rely on an entity separate from 160 Royal Palm. Thus, as a result of the closing, the loan obligations were payable to KK-PB Financial, LLC which also received the benefit of the mortgage given by 160 Royal Palm.

The transaction closed at the end of August 2013; specifically, August 30, 2013. The end result of the transaction is that 160 Royal Palm remained the title owner to the hotel property, but Mr. Straub sold his 100% membership interest in 160 Royal Palm to an entity beneficially owned by and controlled by Mr. Matthews. The cash portion of the purchase price, after adjustments, was paid directly to Mr. Straub. 160 Royal Palm itself gave a note in favor of KK-PB Financial, secured by a mortgage on the hotel property.

There was a delay in the payment of the cash portion of the purchase price to be distributed to Mr. Straub. In the motion to limit credit bidding the Debtor seems to make a point of this, but the evidence does not support any negative inference. Likewise, the evidence supports the conclusion that some of the funds paid to Mr. Straub, about $2.6 million, are traceable to funds provided by the EB-5 Investors. But the evidence admitted in these matters would not permit the Court to conclude that Mr. Straub knew this was the case at the time.

There was another, more important delay, following the August 2013 closing. The mortgage given by 160 Royal Palm, securing the hotel property in favor of KK-PB Financial, was not recorded until the following March 2014, about 7 months after the closing. The Debtor argues that this delay was intentional. The Debtor alleges that Mr. Straub was assisting Mr. Matthews and others in misleading potential EB-5 Investors by purposely causing the mortgage not to be recorded so that EB-5 Investors would not know of the existing lien on the hotel property prior to their investments. The Debtor alleges that more than $10 million was invested by EB-5 Investors between the August 2013 closing and the recording of the mortgage in March 2014. Mr. Straub's counsel at the time, Craig Galle, testified credibly that Mr. Straub always intended the mortgage to be recorded immediately, that they were surprised it had not been recorded, and that the failure was due to counsel for Mr. Matthews who also acted as escrow agent for the closing. Based on the evidence admitted in these matters, the Court cannot conclude that Mr. Straub had any bad intent in connection with the delay in recording of the mortgage.

Let me transition now to the claim of KK-PB as presented in this matter. The evidence includes the original purchase and sale agreement and two amendments, and the loan documents including the note and mortgage. KK-PB also offered the testimony of Craig Galle who represented Mr. Straub and KK-PB Financial in connection with the sale transaction and the seller financing. Mr. Galle gave a thorough and credible history of the transaction. Through the testimony of Salvatore Spano, KK-PB addressed in detail the calculation of its claim as presented in its proof of claim, which was also admitted. There is some dispute as to whether KK-PB's claim as presented in its proof of claim, in the amount of $39,684,844.73, should be reduced by a sum equal to the broker's commission reimbursement included in the claim tabulation and by the amount of one payment on the note. These subtractions would reduce the claim to $37,548,635.30. In the end, it will not matter whether KK-PB's claim as presented is $39.6 million or $37.5 million as will be apparent further along in this ruling.

The Debtor presented a number of arguments in support of its request that KK-PB's claim be deemed unsecured, at a minimum, to that the claim be estimated at $0 and therefore be entitled to no distribution in this case, at the most extreme.

In its motion, the Debtor begins by arguing that the note and mortgage held by KK-PB are not enforceable as there was a complete lack of consideration. The Debtor points out that the Debtor, 160 Royal Palm, undertook the obligation represented by the note and gave a mortgage on its property but that the Debtor, as an entity, received nothing in the transaction. But this argument presents a fundamental misunderstanding of the transaction. At the time of the transaction, 160 Royal Palm was a single purpose entity owned solely by Mr. Straub and controlled by him. For tax purposes, it was a flow-through entity. Likewise, the purchaser for the hotel property under the original purchase and sale agreement was another single purpose entity beneficially owned solely by Mr. Matthews. The purchase and sale agreement, as initially formed, represented a sale of Mr. Straub's indirect ownership of the hotel property to Mr. Matthews. There is nothing unusual about this structure. Commercial real estate transactions often involve entities formed particularly for purposes of the subject property. That the final transaction took the form of a purchase and sale of the membership interest in 160 Royal Palm is also not unusual. Indeed, in years past, before the State of Florida became wise to this practice and relevant laws were amended, it was common for parties to structure real estate transactions as equity sales in order to try to avoid payment of obligations to the state. But

even now there are valid reasons to prefer an equity transaction, not the least of which is preservation of development rights held by the title owner of property. The Debtor argues that in the end the transaction looks like a leveraged buyout, where the target, the Debtor, ended up with all the baggage in the form of new debt obligations and a lien on its assets but itself received no benefit other than a new owner. Indeed, this is true. But that does not mean there is a complete lack of consideration. That is because the consideration flows between the real parties in interest, Mr. Matthews and Mr. Straub. That the transaction could be subject to challenge for other reasons does not mean that there was a complete lack of consideration.

In its motion, the Debtor also argues that the note and mortgage are not enforceable as they are unconscionable. The Debtor argues that Mr. Straub was effectively on both sides of the transaction, because he was the owner of 160 Royal Palm the moment before it agreed to give him, indirectly through KK-PB, a note and mortgage for which 160 Royal Palm would receive nothing. But to say that this structure represents unconscionable and thus unenforceable obligations would be to say that all leveraged buyouts are automatically subject to challenge for this reason. The selling equity owners are always the ones that cause the company to undertake the weight for payment for their shares. The Court is not aware of any case law ruling solely on this basis and the Debtor did not cite any.

The Debtor argues that the claim of KK-PB Financial is subject to equitable subordination as permitted by section 510 of the Bankruptcy Code. Under 11th Circuit precedent, a claim is subject to equitable subordination if the claimant was involved in inequitable conduct, that conduct resulted in injury to other creditors or conferred an unfair advantage on the creditor, and subordination of the claim is otherwise consistent with the Bankruptcy Code. The inequitable conduct need not be directly related to acquisition of the creditor's claim. Equitable subordination applies only to that portion of a claim necessary to remedy the wrong identified by the Court.

The first step in presenting an equitable subordination case is to prove that the creditor in question acted in a manner that requires the Court to exercise its equity powers. In support of this request for relief, the Debtor argues that Mr. Straub was effectively on both sides of the August 2013 transaction, causing 160 Royal Palm to pay him, and to become obligated on a loan payable to his entity, for Mr. Straub's own equity interest in 160 Royal Palm. But, again, this argument ignores the purpose of the transaction, which was effectively to transfer control of the hotel property from Mr. Straub to Mr. Matthews, which was accomplished. The Debtor argues that Mr. Straub knew that 160 Royal Palm would be unable to service the debt owed to KK-PB. There is no evidence to support the conclusion that Mr. Straub had that subjective understanding at the time of the closing. Indeed, based on the evidence admitted here, he expected 160 Royal Palm to raise capital to complete the project, pay KK-PB's obligation, and make a success of the hotel. The Debtor argues that Mr. Straub assisted Mr. Matthews in misleading EB-5 Investors by purposely delaying recording of the mortgage. As I noted a few minutes ago, the evidence submitted in this matter does not support that conclusion. Lastly, the Debtor argues that Mr. Straub had an unusually close relationship with Mia Matthews, Mr. Matthews spouse, and that Mr. Straub provided loans and assistance to Mr. Matthews that should cause the Court to infer that Mr. Straub was somehow Mr. Matthews conspirator in all regards. The evidence admitted in this matter does not support that conclusion. Without additional proof of inequitable conduct on the part of Mr. Straub, there can be no equitable subordination.

This is an appropriate point to comment on Mr. Straub's credibility as a witness in this matter. I was admitted to the bar more than 28 years ago. Since that time, as a lawyer, as a client representative, and as a judge, I have seen hundreds of evidentiary hearings and trials. It is possible that I have forgotten a noteworthy witness or two. But scanning all of those hearings, I cannot remember a witness who was more evasive than Mr. Straub. Mr. Straub himself and also his counsel suggest that Mr. Straub's approach to answering questions is a symptom of several infirmities. Yet this is not consistent with my experience in watching Mr. Straub testify in this matter. When it suited him, Mr. Straub could answer yes or no and provide a concise explanation. When it did not suit him, Mr. Straub would ramble on at length, seemingly addressing a question other than the one asked. If this was not an intentional act on Mr. Straub's part, it is hard to imagine how he could have capacity to manage the many significant commercial real estate investments that he is solely responsible for overseeing. The Court does not believe that Mr. Straub is unable to answer direct questions. It is clear that Mr. Straub is unwilling to answer questions that he perceives are not to his advantage to answer.

But does Mr. Straub's lack of credibility before this Court mean that he was involved in a conspiracy with Mr. Matthews and others including, among other things, causing the KK-PB mortgage not to be recorded for seven months? Am I suspicious of Mr. Straub's actions in this matter? Yes, I am. Is that suspicion sufficient to support the Debtor's theories based in equity in this matter? No, it is not. There needs to be concrete evidence to support the Debtor's claims based in equity, and the Debtor did not meet its burden on those claims.

Let me be clear that the Court makes no finding that Mr. Straub and/or KK-PB did not have any involvement in the fraudulent scheme described by the Debtor and the EB-5 Investors. The Court is only finding that in the context of this claim estimation procedure, which involves solely the determination of the claim of KK-PB in this bankruptcy case, that the Court has not seen sufficient evidence to support the Debtor's claims in this regard. Today's ruling will have no impact on the ability of the Debtor or the EB-5 Investors or anyone else to pursue their claims against KK-PB, Mr. Straub, and others.

The Debtor has waived the re-characterization argument and so the Court need not address it.

Now we get to the meatiest parts of the Debtor's argument, the components on which the parties spent the most time in the evidentiary hearing and at closing argument.

The Debtor argues that both the note obligation undertaken by the Debtor in favor of KK-PB Financial in August 2013, and the later recording of the mortgage in favor of KK-PB Financial in March 2014, constitute fraudulent transfers that are avoidable under applicable law.

Under section 544(b)(1) of the Bankruptcy Code, the Debtor may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim. For applicable law, the Debtor looks to Chapter 726 of the Florida Statutes. The Debtor relies on the actual fraud provisions and both constructive fraud provisions provided under Florida law.

Before getting to the merits of any fraudulent transfer claim, the Court must address the question of whether any fraudulent transfer action could be pursued by the Debtor in this bankruptcy case against KK-PB. KK-PB argues that this bankruptcy case was commenced more than 4 years after both the August 2013 closing, at which the note was given by the Debtor to KK-PB, and after the mortgage was recorded in March 2014. KK-PB argues that, under applicable non-bankruptcy law, no claim could be pursued by any creditor as fraudulent transfer claims would be barred by the statute of limitations, and so the Debtor cannot pursue any such claim under section 544.

The Debtor raises two arguments in response to this. Both arguments have merit.

First, the EB-5 creditors filed their initial complaint in the District Court against various parties, including KK-PB, on November 14, 2016. That complaint was filed within 4 years after both of the transfers at issue in this case. That initial complaint included fraudulent transfer counts, but none of those fraudulent transfer counts focus on transfers made by 160 Royal Palm. The EB-5 creditors' initial complaint included claims against KK-PB based in unjust enrichment and requested an equitable lien on the hotel property ahead of the rights of KK-PB. In the Court's view, that initial complaint did not contain sufficient factual allegations to support a fraudulent transfer claim against KK-PB to avoid the note obligation undertaken by 160 Royal Palm in August 2013. However, the factual allegations contained in the EB-5 creditors initial complaint are in fact sufficient to form the basis of a fraudulent transfer claim against KK-PB seeking to set aside the late-recorded mortgage as a fraudulent transfer. Under Rule 15, the EB-5 Investors have the right to amend the District Court complaint to state a claim based on the facts already stated in the original complaint and arising under a different legal theory, and any such claim would relate back to the original complaint. Thus, the EB-5 Investors could pursue a fraudulent transfer claim identical to one posed by the Debtor here, seeking to set aside the late-recorded mortgage given by 160 Royal Palm to KK-PB Financial. From the evidence admitted here, it appears that the EB-5 Investors are in fact pursuing such an amended complaint.

Any fraudulent transfer claim based on the Debtor becoming obligated on the mortgage to KK-PB is now property of the estate in this bankruptcy case. That claim can only be pursued by the Debtor. The Debtor could seek to intervene as a plaintiff in the District Court action, solely to pursue that claim, and then ask the District Court to refer the matter to this Court consistent with 28 U.S.C. section 157 and the standing order of reference in this District.

I need to address here a specific point of procedure that may be relevant to this analysis. A claim under section 544 is a core matter subject to bankruptcy jurisdiction under 28 USC section 1334. When an action is pending in a United States District Court and that action falls under federal bankruptcy jurisdiction, such an action is not subject to removal to a bankruptcy court as the relevant removal statute applies only to removal of state actions. Instead, the action is subject to referral to the applicable bankruptcy court. There is no time limit on such referral. Thus, the Debtor here is free to seek to have the relevant claims in the EB-5 District Court action specifically referred to this Court.

In summary, the EB-5 Investors brought a claim against KK-PB within 4 years after the transfers at issue. That claim states facts that would support the same fraudulent transfer claim presented by the Debtor here with regard to avoidance of KK-PB's mortgage. The EB-5

creditors' complaint could be amended to present a timely fraudulent transfer theory based on the same facts and that fraudulent transfer claim would relate back to the filing of the EB-5 creditors' original complaint. And the resulting claim is property of the estate in this case which only the Debtor can pursue. That claim could then be referred to this Court consistent with federal law and the standing order of reference in this district. While this sounds like a novel analysis, let me point out that this is in fact the purpose of section 544. There are creditors who could indeed pursue a timely fraudulent transfer claim against KK-PB and Congress has given that claim to the Debtor to pursue for the benefit of all of its creditors. This outcome is exactly what was intended by Congress.

But the Debtor has another, also valid, legal argument to support the timeliness of its fraudulent transfer challenges to KK-PB's secured claim, not just the mortgage but also the note obligation. Section 544(b)(1) requires only that there be an unsecured creditor who could pursue a claim under otherwise applicable law. Certain creditors are given special rights to pursue fraudulent transfer claims for an extended period of time. In this case, the SEC is a creditor of the estate. The evidence includes judicial notice of proof of claim number 71 filed by the SEC as well as judicial notice of the District Court complaint filed by the SEC in which the Debtor is named as a relief defendant. In addition, the evidence in this case indicates that a significant amount of EB-5 Investor funds ended up with the Debtor, both before the closing in August 2013 and after that date including before and after the late recording of KK-PB's mortgage. In the SEC's complaint filed in the District Court, the SEC seeks, among other things, disgorgement of all ill-gotten gains as a result of defrauding the EB-5 creditors as well as civil penalties. The Court notes that the SEC's claim is allowed in this bankruptcy case, as no objection to claim has been filed to date. The Court also notes that the SEC is listed in the Debtor's schedules as a creditor holding an unsecured claim against the estate. As the Debtor points out, the SEC has the benefit of an extended statute of limitations for pursuit of fraudulent transfer claims. For the SEC, the period is 6 years, under 28 USC sections 2415(a) and 2416. There is precedent for extension of the fraudulent transfer period for the benefit of the bankruptcy estate in cases where the United States is a creditor. I refer the parties to *Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.),* 503 B.R. 239, 272-75 (Bankr. S.D.N.Y. 2013) and to *Mukamal v. Citibank N.A. (In re Kipnis),* 555 B.R. 877 (Bankr. S.D. Fla. 2016). Based on the evidence admitted in this matter, the SEC is both an existing creditor at the time of each of the alleged transfers and also a future creditor, and thus may take advantage of claims under Florida Statutes sections 726.105 and 726.106.

Having ruled that it is possible for the Debtor to bring timely fraudulent transfer claims against KK-PB, it is appropriate to address the merits of the fraudulent transfer claims.

The first step in any claim under section 544(b)(1) is that there must be a creditor with a claim allowable in this case that could also pursue a claim under relevant fraudulent transfer law. This is typically referred to as a triggering creditor. The amount of the claim of a triggering creditor is not relevant. The claim amount need not bear any relation to the transfer a Debtor or trustee seeks to avoid. For claims under section 726.105, the creditor need not have been a creditor at the time of the transfer as that provision includes both existing and future creditors from the point of view of the time of transfer. For claims under section 726.106, the creditor must have been a creditor at the time of the transfer. Section 726.105 includes claims based in actual intent to defraud and constructive fraud claims tied to unreasonably

small assets or intent to incur debts beyond the ability to pay.  Section 726.106 includes constructive fraud claims based on insolvency of the Debtor.

The Debtor offered evidence to support the conclusion that there are more than one creditor that may support relief under each of these provisions.  These creditors include the EB-5 Investors, whose claims arose partly prior to each of the transfer dates and partly after those dates.  These creditors also include the SEC and several parties who provided goods and services to the hotel project.  Thus, there are multiple creditors who have claims that are allowable in this case.  It does not matter that those claims have not been finally allowed.  The fact that they are facially allowable at least in part is sufficient for purposes of these matters.

Thus, the Debtor met its initial burden of showing that there are in fact creditors of this estate who could bring claims under Florida Statutes section 726.105 and 726.106.  The Court must now address the elements of those claims.

Before moving to a more detailed analysis of the fraudulent transfer concerns, it is important to note again the context of this ruling.  The Court is not now ruling on a fraudulent transfer claim brought by the Debtor against KK-PB by way of complaint.  The Court is ruling on a motion to estimate KK-PB's claim and the Debtor has objected to estimation of that claim, in part, on the ground that KK-PB's note and/or the mortgage securing it are subject to avoidance.  It is not necessary here for the Court to determine conclusively that there is an absolute right to success on the part of the estate or on the part of KK-PB for that matter.  Indeed, there is substantial case law to the effect that, for purposes of estimation, the Court may consider the probability of success or failure of components of a claim or challenges to a claim in estimating the claim.

Let's start with the Debtor's actual fraud argument, based in Florida Statutes section 726.105.  The Debtor points to so-called badges of fraud that the Debtor believes support the conclusion that Mr. Straub, controlling 160 Royal Palm up to the moment prior to the closing, had actual intent to defraud creditors of 160 Royal Palm when he caused that entity to become obligated to KK-PB and grant a mortgage to KK-PB.  The Debtor argues that Mr. Straub was an insider of the Debtor.  This appears obvious as a technical matter, but in the context of the transaction is not significant.  The Debtor adds that there was no consideration for the obligations undertaken by KK-PB, but as the Court has already pointed out this is not the case.  The Debtor argues that the Debtor became insolvent as a result of the obligation to KK-PB.  The Court agrees that this is the case, and will analyze this in more detail in a moment.  But insolvency, by itself, does not indicate actual fraud.  Finally, the Debtor argues that Mr. Straub caused the mortgage to be concealed for 7 months, misleading EB-5 Investors who invested more than $10 million.  But the evidence admitted in this matter does not lead the Court to conclude that Mr. Straub concealed the mortgage.  To the contrary, it was in Mr. Straub's best interest that the mortgage be recorded immediately and it appears that this is what his counsel intended.  The evidence admitted here does not support a finding that Mr. Straub caused 160 Royal Palm to give the note and mortgage with actual intent to defraud creditors.

For constructive fraud claims under either section 726.105 or 726.106, the transfer must be made without receiving a reasonably equivalent value.  The Debtor itself received nothing at

all from the transaction. No value at all was received by the Debtor on account of the note or the mortgage. This element is met.

KK-PB argues that the Court should collapse the overall transaction, taking into account that control over the hotel property was transferred in consideration of the note and mortgage obtained by KK-PB. It is not appropriate to approach the fraudulent transfer analysis in this case from that vantage point. At the time of the closing, and again when the mortgage was recorded, the Debtor had significant obligations to others that were then unpaid and that remain unpaid now. To collapse the Debtor with its equity owner for purposes of determining reasonably equivalent value would be to the detriment of those creditors. The Court is not aware of any case law in this or any other circuit that would permit determination of reasonably equivalent value as KK-PB argues under these circumstances.

The final element for relief under the constructive fraud provision of section 726.105 requires the Debtor to show either that at the time of the transfers the Debtor was engaged or was about to engage in a business for which its remaining assets were unreasonably small in relation to its business or the Debtor intended to incur or reasonably should have believed that it would incur debts beyond its ability to pay as they became due. In this case, the evidence supports both conclusions.

The question of whether a Debtor's remaining assets are unreasonably small, in this context, typically requires an analysis of whether at the time of the transfer there was a likelihood of future insolvency or inability to pay debts as they become due. Based on the evidence admitted in this matter, on the date of the closing, it was very likely that the Debtor would be unable to pay the debt service to KK-PB. Indeed, it is undisputed that the Debtor was able to make only 3 payments to KK-PB before defaulting. For the same reason, the evidence supports the conclusion that the Debtor should reasonably have believed that it would be unable to pay KK-PB's note obligation, which was its largest ongoing payment obligation. The recording of KK-PB's mortgage only increased the Debtor's financial stress by making it less likely the Debtor could obtain additional capital. Thus all of the elements for relief under section 726.105(1)(b) are satisfied in this case.

The final element for relief under section 726.106 is insolvency. The Debtor must either have been insolvent at the time of the transfers or was made insolvent by the transfers. The evidence admitted in this matter indicates that the Debtor was rendered insolvent by the note obligation to KK-PB entered into at the closing in August 2013, and the Debtor remained insolvent at the time the mortgage was recorded in March 2014.

In determining that the Debtor was rendered insolvent by the note obligation and remained insolvent at the time the mortgage was recorded, the Court has relied on expert testimony by Jeffrey Brown, an expert in valuation of hotel properties, and Marcie Bour, a forensic accountant, each offered by the Debtor. KK-PB did not offer contrary expert testimony.

Mr. Brown presented an extremely thorough analysis of the retrospective value of the hotel property on the relevant dates, based on both the income capitalization approach and the comparable sales approach. Mr. Brown's assumptions were reasonable and well supported and his analysis well presented, logical, and consistent with industry practice. KK-PB has suggested that, based on certain of Mr. Brown's testimony on cross-examination, that the

Court should adjust Mr. Brown's calculations to reflect several modified assumptions. Based on Mr. Brown's own testimony, those modifications would not be reasonable. The Court accepts Mr. Brown's opinions of value without modification.[3]

Ms. Bour was equally thorough. With only a few exceptions, Ms. Bour's assumptions were reasonable and well supported. Her analysis was well presented, logical, and consistent with industry practice.

Ms. Bour's discounting of the Debtor's liability to KK-PB is not appropriate under the law. When determining insolvency under Florida law for purposes of fraudulent transfer analysis, liabilities should be included consistent with the legal obligations of the Debtor at the time of valuation and not altered to reflect what alternative financing might be available to the Debtor. This adjustment results in an increase in the Debtor's liabilities on August 31, 2013 by about $6.9 million and on March 29, 2014 by about $6 million.

The Court also takes issue with Ms. Bour including as a liability of the Debtor as of August 31, 2013 the sum shortly thereafter paid to Mr. Straub in cash as part of the purchase price for his equity interest in the Debtor. This was not a legal obligation of the Debtor and should not be included as the Debtor's liability. That the funds flowed through the Debtor makes no difference. This results in a decrease in the liabilities of the Debtor on that date by about $6.2 million.

Finally, the Court also takes issue with Ms. Bour including as an asset in her August 31, 2013 balance sheet a cash balance of about $2.6 million as the evidence shows that those funds were not assets of the Debtor but were parked with the Debtor for later payment to Mr. Straub as part of the equity sale transaction. This results in a decrease in assets of about $2.6 million on August 31, 2013.

KK-PB takes issue with the inclusion of about $832,000 for liens and obligations, about $8,900 for Van Linda Ironworks, and about $5.4 million for New Haven Contracting South, shown on Ms. Bour's August 31, 2013 balance sheet. Based on the evidence admitted in this matter, the Court finds these items are appropriate for inclusion in the solvency analysis. But even if they are not, and they are backed out of the calculation, the Debtor was woefully insolvent on August 31, 2013.

Similarly, KK-PB takes issue with the inclusion of about $832,000 for liens and obligations, about $11,700 for Van Linda Ironworks, about $2.2 million for New Haven Contracting South, about $536,000 for USREDA, about $2.975 million shown on the Debtor's books as retainage received, and about $7.63 million shown as advanced to Galle and Evans. Based on the evidence admitted in this matter, the Court finds all of these items are appropriate for inclusion in the solvency analysis. But even if they are not, the Debtor remained woefully insolvent on March 28, 2014 when the mortgage was recorded.

---

[3] KK-PB offered lay opinion testimony of Mr. Straub, and the Court also heard lay opinion testimony from Mr. Ryan Black, regarding the value of the Debtor's hotel property on relevant dates. The Court gave no weight to this testimony. Mr. Straub and Mr. Black lack the expertise of an appropriate expert witness, such as Mr. Brown. In addition, Mr. Straub's testimony suffered from apparent bias.

Thus, all the elements for relief under section 726.106(1) are satisfied in this case.

Under Florida statues section 726.109(4) a good faith transferee has certain rights equivalent to the value given to the Debtor. But here no value was given to the Debtor itself, and so KK-PB may not take advantage of the good faith defense. Again, as I noted a few minutes ago, given the circumstances of this case, in particular the existence of a number of creditors who would be harmed by such an analysis, the collapsing of the Debtor with its owner for purposes of this defense would not be appropriate. Because KK-PB is the initial transferee of the note and mortgage, it also does not have the benefit of the good faith defense under section 550 of the Bankruptcy Code.

As a result of these rulings, the note obligation would be avoidable under section 544 and the mortgage would also be avoidable under section 544 and would be recoverable for the estate under section 550.

I find that the evidence admitted in this matter proves these claims by a preponderance of the evidence. In other words, if this was a trial on the merits of a complaint presenting the fraudulent transfer claims under section 544, the Debtor would have won.

The result of this analysis is that the Court will estimate the claim of KK-PB, for all purposes in this bankruptcy case, as an unsecured claim and will estimate the claim amount as zero dollars. Because KK-PB has neither a lien nor an allowed claim, KK-PB is not permitted to credit bid under the explicit text of section 363(k). Thus, the Debtor's motion seeking an order prohibiting KK-PB from credit bidding will be granted.

The Debtor also asked the Court to deny KK-PB the right to credit bid under the "for cause" standard in section 363(k). The were two arguments in this regard. First, it was alleged that Mr. Straub committed bad acts and that this constitutes cause. Based on the evidence admitted in these matters, the Court is unable to make such a finding in this case. Second, it was argued that allowing KK-PB to credit bid would chill bidding to the detriment of other creditors. I am aware that there is some case law suggesting that this would be sufficient to constitute cause under section 363(k). I do not agree with that case law. The Supreme Court has repeatedly ruled that state law lien rights are sacrosanct in bankruptcy matters except where Congress has explicitly provided otherwise. The ability of a secured creditor to protect its lien rights by bidding its own claim in a sale of its collateral is a central component of the rights of a lien holder. The credit bid right should be abrogated only under very unusual circumstances. To suggest that a sale process will be easier, more efficient, or more fruitful without one party bidding is simply not enough. This analysis is not necessary to the Court's ruling today, as the Court will grant the Debtor's motion to prohibit KK-PB from credit bidding for other reasons.

New Haven Construction responded at ECF number 169 noting that it holds a lien senior to that of KK-PB, in the approximate amount of $3.3 million, contrary to KK-PB's suggestion that it was in first position. It appears that KK-PB has since acquired that New Haven claim. The Court's ruling today has no impact on that New Haven claim, which appears to be a valid, secured claim that may have credit bid rights.

For the foregoing reasons, the Court will grant the Debtor's motion to limit credit bidding, ECF number 103, and will enter an order prohibiting KK-PB from credit bidding its claim

represented by proof of claim number 70-3 in any sale of the Debtor's hotel property and related assets. With regard to KK-PB's motion to estimate its claim at ECF No. 133 and the Debtor's response thereto, the Court will enter an order estimating the claim as an unsecured claim and estimating its amount as $0, for all purposes in this case. The Court will deny KK-PB's motion for relief from stay or to dismiss this case, found at ECF No. 69. The Court will prepare its own orders.

In the motion to limit credit bidding, the Debtor also requested that Palm House Hotel, LLLP be denied any ability to credit bid in connection with the sale of the Debtor's hotel property and related assets. Palm House Hotel, LLLP was duly served with the motion and the notice of hearing and failed to respond. ECF No. 111. Thus, the Debtor's request to deny any credit bid rights of Palm House Hotel, LLLP will be granted.

For the forgoing reasons, the Court ORDERS and ADJUDGES as follows:

1.      In light of *Secured Creditor KK-PB Financial, LLC's Motion to Estimate Claim for Purposes of Credit Bidding Pursuant to 11 U.S.C. §§ 502(c) and 363(k)* [ECF No. 133] and the *Debtor's Response in Opposition to KK-PB Financial, LLC's Motion to Estimate Claim for Purposes of Credit Bidding Pursuant to 11 U.S.C. §§ 502(c) and 363(k)* [ECF No. 163], the claim of KK-PB Financial, LLC, represented by proof of claim 70-3 as the same may be amended, is estimated as an unsecured claim in the amount of $0.00 for all purposes in this chapter 11 case.

2.      The *Debtor's Motion to Limit Credit Bids with Respect to Sale of Substantially All of Its Assets* [ECF No. 103] is GRANTED. KK-PB Financial, LLC, on account of its claim represented by proof of claim 70-3 as the same may be amended, and Palm House Hotel, LLLP, shall not be permitted to credit bid under 11 U.S.C. § 363(k) in connection with any sale of the Debtor's real property located at 160 Royal Palm Way, Palm Beach, Florida 33480, related assets, or any part thereof.

3.      Nothing in this order shall be construed as a ruling by the Court with regard to proof of claim 72-1 filed by New Haven Contracting South, Inc., or affecting the rights, if any, of the holder of such claim to credit bid at any sale of the Debtor's assets in this case.

4.      *Secured Creditor KK-PB Financial, LLC's Motion to (I) Modify and Terminate Automatic Stay;*

*or (II) Dismiss Chapter 11 Proceeding* [ECF No. 69] is DENIED.

### ###

Copy to:

Philip J. Landau, Esq.

*Philip J. Landau, Esq. is directed to serve a copy of this order on all appropriate parties and file a certificate of service.*

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**9:19-CV-80342-RLR**

KK-PB FINANCIAL, LLC,                                   Bankruptcy Case No:
                                                        18-19441-EPK

      Appellant,

v.

160 ROYAL PALM, LLC,

      Appellee.

_____/

## ORDER CERTIFYING MATTER FOR DIRECT
## APPEAL TO THE UNITED STATES COURT OF APPEALS

This matter is before the Court *sua sponte*. The instant appeal arises from bankruptcy proceedings in *In re 160 Royal Palm, LLC*, Case No. 18-19441-EPK (Bankr. S.D. Fla.). Appellant KK-PB Financial, LLC, appeals the bankruptcy court's estimation order of February 26, 2019. DE 1, Ex. A ("Estimation Order"). The Court has considered the briefs of the parties and has reviewed the record of related appeals before the Eleventh Circuit Court of Appeals. For the reasons discussed below, the Court certifies this appeal to the Eleventh Circuit under 28 U.S.C. § 158(d)(2)(A)(iv).

## I.     BACKGROUND

The proceedings below involve the chapter 11 bankruptcy of Debtor-Appellee 160 Royal Palm, LLC.[1] Glenn Straub, a Palm Beach County developer, is the sole member of Appellant KK-PB Financial, LLC ("KK-PB"). Straub formerly held a 100% membership interest in Debtor, and Debtor owned the Palm House Hotel, an unfinished hotel in Palm Beach, Florida. In August 2013, a "seller-financed" transaction was consummated in which (1) Straub's equity

---

[1] This factual history is derived from Appellant's Statement of the Case and Facts in its brief at docket entry 23, unless cited otherwise.

interest in Debtor (and thus his indirect ownership of the Hotel) transferred to Palm House LLC, a special purpose vehicle created by Robert Matthews, the former manager of Debtor;[2] (2) Matthews paid $6.2 million in cash to Straub; and (3) Debtor issued a $27.468 million promissory note to KK-PB, secured by a mortgage on the Hotel. The mortgage was not recorded until March 28, 2014, and Debtor defaulted on the note on February 1, 2015.[3]

On August 2, 2018, Debtor filed for chapter 11 bankruptcy, under which it sought to liquidate the Hotel, its most significant asset. KK-PB filed a proof of claim evidencing its mortgage interest in the Hotel, and Debtor objected to the proof of claim on the grounds that the note and mortgage were void as part of a fraudulent transfer. Debtor moved for approval to sell the Hotel through public auction and to prevent KK-PB from credit bidding for the Hotel, which means using the mortgage interest to support a bid to purchase the Hotel. KK-PB responded by moving for the bankruptcy court to estimate its mortgage claim "to permit it to credit bid at the auction and to determine the amount of its maximum credit bid."

The bankruptcy court set each party's motion for hearing. KK-PB contends that at the hearing, the bankruptcy court went beyond the purpose of the hearing that was noticed to the parties and proceeded to estimate KK-PB's claim for all purposes, not just for credit bidding. The bankruptcy court issued the Estimation Order on February 26, 2019, under which KK-PB's mortgage of the Hotel was valued at $0 for all purposes. DE 1, Ex. A. The basis for this decision was that the note and mortgage were part of a constructively fraudulent transfer under Florida law because Debtor did not receive "reasonably equivalent value." The effect of the Estimation Order was to disallow KK-PB's claim. In other words, KK-PB was not entitled to

---

[2] DE 27, at 2.
[3] DE 27, at 10.

credit bid to purchase the Hotel, and further, KK-PB was not entitled to participate in the proceeds of the Hotel's sale based on its mortgage interest. The Estimation Order is the subject of this appeal.

As a result of the delay caused by the credit-bidding and estimation disputes, Debtor moved to extend the bidding deadline.[4] The bidding procedures were originally approved on October 16, 2018, at which point there was a stalking-horse bid for $32 million. After several extensions, the bidding deadline was ultimately set to March 4, 2019. In January and February of 2019, during the estimation hearing, Debtor and KK-PB contemplated a settlement under which KK-PB would purchase the Hotel. Because KK-PB did not tender the deposit required under the settlement, the bankruptcy court did not approve the settlement. On February 26, 2019, the day the estimation order was issued, Debtor moved for approval of a private sale of the Hotel to a new bidder, LR U.S. Hotels Holdings, LLC ("LR"), in which LR would pay $39.6 million, which was higher than the stalking-horse bid of $32 million. KK-PB objected, arguing that it had offered a higher price for the Hotel and that the private sale was improper. The bankruptcy court approved the sale to LR free and clear of liens, claims, and encumbrances on March 12, 2019. Three orders related to that decision were appealed to this Court and affirmed, and they are now on appeal before the Eleventh Circuit.[5]

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 158(d)(2)(A), a court of appeals shall have jurisdiction over a direct appeal if a lower court certifies that any one of the following conditions is met:

---

[4] The facts in this paragraph are derived from this Court's ruling in *In re 160 Royal Palm, LLC*, 600 B.R. 119 (S.D. Fla. 2019).

[5] *In re 160 Royal Palm, LLC*, 600 B.R. 119 (S.D. Fla. 2019), appeal docketed, No. 19-11402 (11th Cir. Apr. 11, 2019) (consolidated appeal of Case Nos. 9:19-cv-80343, 9:19-cv-80351, 9:19-cv-80363).

(i)     the judgment, order, or decree involves a question of law as to which there
        is no controlling decision of the court of appeals for the circuit or of the
        Supreme Court of the United States; or

(ii)    the case involves a matter of public importance; or

(iii)   the judgment, order, or decree involves a question of law requiring
        resolution of conflicting decisions; or

(iv)    an immediate appeal from the judgment, order, or decree may materially
        advance the progress of the case or proceeding in which the appeal is
        taken.

Notably, this certification standard is not discretionary—a bankruptcy or district court should

certify the appeal if it concludes that any one of the four conditions is met. *Brannan v. Wells*

*Fargo Bank, N.A.*, No. 02-16647, 2013 WL 1352350, at *2 (S.D. Ala. Bankr. Apr. 3, 2013).

### III.     DISCUSSION

Under 28 U.S.C. § 158(d)(2)(A)(iv), a district court certifies that immediate appeal of an

order "may materially advance the progress of the case or proceeding in which the appeal is

taken." Here, several factors indicate that the Court should certify KK-PB's appeal of the

Estimation Order to the Eleventh Circuit. First, an issue on appeal here—whether the note and

mortgage are void as part of a fraudulent transfer—is directly relevant to KK-PB's arguments on

appeal before the Eleventh Circuit.[6] There, KK-PB argues that the bankruptcy court abused its

discretion by allowing Debtor to proceed with a private sale of the Hotel when KK-PB had made

a higher offer to purchase the Hotel.[7] In deciding that question, the Eleventh Circuit would

likely address the fraudulent-transfer issue. Whether KK-PB previously "saddled Debtor with

millions of dollars in debt through an illicit fraudulent transfer scheme," as Debtor argues,[8] is

---

[6] DE 23, at 2–3.
[7] Appellant's Brief at 1, *KK-PB Financial, LLC v. 160 Royal Palm, LLC*, No. 19-11402 (11th Cir. May 21, 2019).
[8] Appellee's Brief at 39, *KK-PB Financial, LLC v. 160 Royal Palm, LLC*, No. 19-11402 (11th Cir. June 20, 2019).

relevant to the bankruptcy court's decision to permit the private sale, notwithstanding KK-PB's offer.

Second, the Court's experience with the proceedings below indicates that the parties would very likely appeal this Court's order to the Eleventh Circuit. The dispute between KK-PB and Debtor has already led to six appeals to this Court and two appeals to the Eleventh Circuit. The Eleventh Circuit has scheduled oral arguments on the appeal of the sale orders for November 21, 2019. Certification has the potential to conserve the resources of both the courts and the parties, and it may facilitate a speedier resolution of this bankruptcy dispute as a whole, the life of which can fairly be described as tortuous. Accordingly, the Court certifies the Estimation Order at issue in this appeal to the Eleventh Circuit.

For all of the foregoing reasons, the Clerk of the Court is **ORDERED** to forward this matter to the Eleventh Circuit Court of Appeals. All other pending motions are **TERMINATED**. In the event this matter is remanded to this Court, any party may move for a terminated motion to be reinstated. The Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 31st day of October, 2019.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

5

# EXHIBIT C

| Date Filed | # | Docket Text |
|---|---|---|
| 11/04/2019 | 44 | PAPERLESS ORDER. In its Order at docket entry 42 , the Court certified the Bankruptcy Court's Estimation Order of February 26, 2019 (DE 1 , Ex. A) for direct appeal to the Eleventh Circuit Court of Appeals. By no later than 11/8/2019, Appellant shall file a notice with this Court indicating whether Appellant intends to proceed with a direct appeal of the Estimation Order. If so, Appellant must file a Notice of Appeal to the Eleventh Circuit on this Court's docket within the time prescribed by the Federal Rules of Appellate Procedure. If Appellant does not intend to proceed with a direct appeal, the Court will reopen this appeal. Signed by Judge Robin L. Rosenberg on 11/4/2019. (hhn) (Entered: 11/04/2019) |